**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| KE DA FU, | No. 07-71087 |
| Petitioner, | Agency No. A075-502-854 |
| v. | |
| ERIC H. HOLDER, Jr., Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted August 4, 2011
Pasadena, California

Before: REINHARDT, WARDLAW, and BERZON, Circuit Judges.

Keda Fu petitions for review of a decision of the Board of Immigration

Appeals (BIA) affirming an Immigration Judge's (IJ) denial of his application for

asylum, withholding of removal, and relief under the Convention Against Torture

(CAT).  We grant the petition in part and remand to the BIA.

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

**1.** The BIA's conclusion that Fu "has not demonstrated that he has a well-founded fear of persecution based on a protected ground . . . or that it is more likely than not that he would be persecuted on account of a protected ground" was not supported by substantial evidence. It rested on an erroneous finding – that there was no objective reason to believe that the Chinese government knew Fu had disclosed information about his salary. Fu credibly testified that, before he left the ship: (1) the chief engineer had made jokes about the Chinese seamen's low salary, attributing his knowledge of their salary to Fu; (2) the political commissar on the ship, whose job it was to report to government officials, had discovered Fu's friendship with the chief engineer and warned Fu to stop talking to him; and (3) the political commissar knew that Fu had disclosed his salary to the chief engineer.

We must uphold the agency's findings of fact "if they are supported by 'reasonable, substantial, and probative evidence on the record considered as a whole.'" *Abebe v. Gonzales*, 432 F.3d 1037, 1039-40 (9th Cir. 2005) (en banc); see 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary . . . ."). Fu's credible and uncontroverted testimony compels the finding, contrary to the agency's, that the Chinese government did learn about Fu's disclosure of his salary. We therefore remand for the BIA to determine in the first instance whether

2

Fu is eligible for asylum or entitled to withholding, based on the record evidence that the Chinese government knew that he had revealed state secrets to the chief engineer. *See INS v. Ventura*, 537 U.S. 12 (2002).

**2.** On the other hand, substantial evidence supports the Board's conclusion that any punishment Fu would face for deserting his position with the merchant marine was for his act of abandoning his job, not persecution for any actual or imputed political opinion.[1] Fu presented no evidence that he faces disproportionate punishment or pretextual prosecution for deserting his post in the merchant marine.[2] *See Chanco v. INS*, 82 F.3d 298, 302 (9th Cir. 1996); *Abedini v. INS*, 971 F.2d 188, 191 (9th Cir. 1992). Moreover, the quasi-military nature of Fu's employment in the merchant marine suggests that the Chinese law punishing desertion does not constitute persecution, *see Barraza Rivera v. INS*, 913 F.2d 1443, 1450 (9th Cir. 1990), and also provides a "legitimate prosecutorial motive" for punishing deserters. *Li v. Holder*, 559 F.3d 1096, 1110 (9th Cir. 2009).

---

[1] At oral argument, Fu disavowed any contention that he would face persecution on account of imputed political opinion for deserting his post. We discuss the issue briefly to clarify the scope of remand. Fu did not appeal the BIA's determination that he did not suffer past persecution, and we thus do not address that portion of the BIA's decision.

[2] In contrast, the record does suggest that the Chinese government uses its state secrets laws as a pretext to harass and intimidate dissidents.

3

**3.** Substantial evidence supports the BIA's determination that Fu is not entitled to CAT relief. Contrary to Fu's assertions, the IJ did not find that people in Chinese prisons are more likely than not to be tortured; she found that *some* prisoners are tortured. The generally harsh and degrading conditions in Chinese prisons and labor reeducation camps do not in and of themselves constitute torture. *See Eneh v. Holder*, 601 F.3d 943, 948 (9th Cir. 2010); *Villegas v. Mukasey*, 523 F.3d 984, 989 (9th Cir. 2008). Even if he is imprisoned, the record does not compel a finding that Fu would more likely than not be among those prisoners tortured.

**4.** Fu's argument regarding the IJ's failure to recognize his witness, Nauman, as an expert is best understood as a due process challenge, which we review de novo, *see Vasquez-Zavala v. Ashcroft*, 324 F.3d 1105, 1107 (9th Cir. 2003), and thus can address despite the BIA's failure to do so.

The IJ did not exclude Nauman as a witness, nor did she substantially limit his testimony. *See Cruz Rendon v. Holder*, 603 F.3d 1104, 1109 (9th Cir. 2010); *Morgan v. Mukasey*, 529 F.3d 1202, 1210-11 (9th Cir. 2008); *Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir. 2000). In fact, the IJ allowed Nauman to testify about the very subject concerning which Fu argues Nauman should have been allowed to testify: the consequences of leaking state secrets. At no point did the IJ limit

4

Nauman's testimony regarding state secrets, and she explicitly considered his testimony in her decision. Thus, even if the IJ erred in not qualifying Nauman as an expert, Fu has failed to establish that he was prejudiced. *See Larita-Martinez v. INS*, 220 F.3d 1092, 1095 (9th Cir. 2000).

**PETITION GRANTED IN PART AND REMANDED.**