**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LAWRENCE AMAECHI ENEH,

Petitioner,

v.

ERIC H. HOLDER Jr., Attorney
General,

Respondent.

No. 05-75264

Agency No.
A093-252-663

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
March 10, 2010—San Francisco, California

Filed April 15, 2010

Before: Cynthia Holcomb Hall, John T. Noonan, and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge Hall

## COUNSEL

Deniz S. Arik and Christopher John Stender, Stender and Pope, PC, Phoenix, Arizona, for the petitioner.

Cynthia M. Parsons, Assistant United States Attorney, Phoenix, Arizona, for the respondent.

## OPINION

HALL, Circuit Judge:

Petitioner Lawrence Amaechi Eneh, a native and citizen of Nigeria, was paroled into the United States in 2000 for adjust-

ment of status. On April 15, 2002, Eneh was convicted for using a communication facility and interstate commerce in aid of racketeering enterprise, namely the sale of marijuana, and was sentenced to 36 months imprisonment. On September 19, 2003, the Department of Homeland Security issued Eneh a Notice to Appear, charging Eneh as removable due to his controlled substance conviction. Eneh conceded removability, and applied for asylum, withholding of removal, and withholding and deferral of removal under the Convention Against Torture ("CAT"). An Immigration Judge ("IJ") denied relief, and the Board of Immigration Appeals ("BIA") affirmed. He sought review in this court, which dismissed for lack of jurisdiction but transferred proceedings to the U.S. District Court for the District of Arizona. Petitioner filed a habeas petition with that court. On July 20, 2005, the government filed a motion to transfer the case to this court pursuant to the REAL ID Act of 2005. This court has jurisdiction pursuant to 8 U.S.C. § 1252. We grant the petition for review and remand to the BIA for further proceedings.

## I.

On January 26, 2004, Eneh appeared, with counsel, for a merits hearing before the IJ. Eneh testified that in 1994 he contracted HIV while working at a nursing home in Minnesota and that he now has AIDS, Capsis Sarcoma, and Valley Fever, requiring him to take 35 pills throughout the course of the day. He testified that prison doctors have told him that he would die without this medication.

Eneh testified that he feared removal to Nigeria, because Nigerian citizens convicted of crimes in foreign countries are immediately taken into custody and imprisoned by Nigerian officials. He testified that prison conditions in Nigeria are terrible, and that the most medication that would be available to him would be aspirin. He testified that prison officials would deny him medicine because (1) people in Nigeria believe that AIDS is something people cause themselves and do not give

it adequate attention; (2) Nigerian officials do not budget for AIDS medication; and (3) Valley Fever, which is particularly life threatening, is unknown in Nigeria. He testified that people living with AIDS in Nigeria are socially ostracized, and he specifically testified that he would be intentionally tortured in prison because he has AIDS. *See* Jan. 26, 2004 Transcript at 48-49. Eneh provided documentary evidence to support his claims, namely that he indeed has AIDS, cancer and Valley Fever and that people with HIV/AIDS in Nigeria are ostracized publicly and socially. He also submitted the State Department's 2002 Country Report for Nigeria, which indicates that prison officials in Nigeria often withhold medical treatment as a form of punishment. *See* U.S. State Dep't, *Country Reports on Human Rights Practices-2002-Nigeria*, at § 1(c) (Mar. 31, 2003).

The IJ concluded that Eneh "was forthright and sincere in all of his testimony and the Court . . . is deeming the respondent credible in his testimony." Nonetheless, the IJ denied all of Eneh's claims. The IJ held that Eneh was statutorily ineligible for asylum and withholding of removal as a result of his controlled substance conviction. With regard to deferral of removal under CAT, the IJ concluded that Eneh's medical deprivation and ostracism in Nigeria would not amount to torture under CAT. He stated:

> There is not any doubt that the respondent's medication may be lacking if he is removed from the United States to Nigeria. However, it is the conclusion of this Court that that will not be done at the instigation of or with the consent or acquiescence of a public official who has custody or control of the respondent and it does not meet the requirement that the act be intentionally inflicted or for a proscribed purpose. It appears from all the documents submitted that Nigeria is in the middle of an AIDS epidemic, and they simply, at this point, do not have the resources to properly treat all the patients requiring medication.

In denying CAT relief, the IJ stated, "It's a shame, the respondent is very articulate and his sentence is two to five, a plea to allow him to remain in the United States and the Court would note that if this were a discretionary request, I would grant it."

On June 21, 2004, the BIA dismissed Eneh's appeal in a brief opinion. The entirety of the BIA's discussion of Eneh's CAT claims is as follows:

> We agree with the Immigration Judge that the respondent has not established that it is more likely than not that he will be tortured if removed to Nigeria due to his drug trafficking conviction. There is no evidence in the record which demonstrates a likelihood that the respondent will be detained upon return to Nigeria or that he will otherwise be subject to torture.

The BIA also affirmed the denial of Eneh's asylum and withholding of removal claims.

## II.

Where the BIA conducts its own review of the evidence and the law, this panel only reviews the BIA's decision, except to the extent it expressly adopts the IJ's decision. *Hosseini v. Gonzalez*, 471 F.3d 953, 957 (9th Cir. 2006). This panel reviews the BIA's factual findings for substantial evidence, and it must uphold those findings unless the record compels a contrary result. *Mihalev v. Ashcroft*, 388 F.3d 722, 724 (9th Cir. 2004).

Subsequent to the briefing in this case, the Ninth Circuit has clarified that despite the jurisdiction-stripping provision in 8 U.S.C. § 1252(a)(2)(C), it has jurisdiction over denials of deferral of removal under CAT. *See Lemus-Galvan v. Mukasey*, 518 F.3d 1081, 1083 (9th Cir. 2008). This

jurisdiction-stripping provision only applies where the IJ expressly premised removal upon a criminal conviction, and not where the IJ based removal on the merits of petitioner's CAT claim. *See id.* at 1083-84; *Morales v. Gonzales*, 478 F.3d 972, 980 (9th Cir. 2007). Because deferral of removal is available under CAT regardless of whether petitioner has been convicted of a crime, a denial of deferral of removal under CAT is always a decision on the merits. *Lemus-Galvan*, 518 F.3d at 1083. Accordingly, this court retains jurisdiction to review Eneh's deferral of removal claim. *Id.*[1]

## III.

**[1]** To prevail on a claim under CAT, a petitioner must prove that it is more likely than not that he or she will be tortured if removed to the designated country. 8 C.F.R. § 208.16(c)(2); *Nuru v. Gonzales*, 404 F.3d 1207, 1216 (9th Cir. 2005). Torture is defined as:

> [A]ny act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity

8 C.F.R. § 1208.18(a)(1). Eneh does not challenge the denial of his asylum and withholding of removal claims. The sole issue on appeal is whether the BIA erred in denying Eneh deferral of removal under CAT.

---

[1]Respondent now concedes that jurisdiction is proper.

It is difficult to discern from the BIA's opinion the precise grounds on which it denied relief. In its two-sentence discussion of Eneh's CAT claim, the BIA first states that "[w]e agree with the Immigration Judge that the respondent has not established that it is more likely than not that he will be tortured if removed to Nigeria due to his drug trafficking conviction." This would seem to indicate that the BIA primarily adopted the IJ's more extensive analysis. The BIA then states that "[t]here is no evidence in the record which demonstrates a likelihood that the respondent will be detained upon return to Nigeria . . . ." However, the IJ did not conclude that Eneh would not be detained and imprisoned if he were removed to Nigeria. To the contrary, the IJ stated that "there is not any doubt that the respondent's medication may be lacking if he is removed from the United States to Nigeria," and he found "all" of Eneh's testimony to be credible. The IJ's sole basis for denying Eneh's CAT claim was that Eneh had not established that the poor treatment of Nigerian prisoners with AIDS constituted intentional torture.

It is unclear whether the BIA adopted the IJ's reasoning in its entirety, affirmed on alternate grounds, added an additional ground for denying Eneh's claim, or simply misconstrued the IJ decision. Such ambiguity in the midst of the BIA's already-limited analysis makes us unable to review the decision below in an adequate manner. *See, e.g.*, *Garcia Gomez v. Gonzales*, 498 F.3d 1050, 1051 (9th Cir. 2007) ("[T]he BIA's sparse reasoning was inadequate to enable [the Court of Appeals] to perform any meaningful review." (internal quotation marks omitted) (alteration in original)); *Franco-Rosendo v. Gonzales*, 454 F.3d 965, 966 (9th Cir. 2006) ("In order for the court to exercise our limited authority, there must be a reasoned explanation by the BIA of the basis for its decision.").

**[2]** Additionally, the BIA's statement that Eneh was not likely to be detained upon return to Nigeria was not supported by substantial evidence. Eneh credibly testified that Nigerian citizens deported for crimes committed in foreign lands are

immediately imprisoned upon returning to Nigeria. He based this testimony on the experiences of his friends in Nigeria, magazine articles he had read, and statements by a DEA official. Nothing in the record contradicts this testimony.

**[3]** A decision by the Seventh Circuit confirms that Nigeria has an official policy of imprisoning its citizens for drug-related crimes committed abroad. In *Bosede v. Mukasey*, 512 F.3d 946 (7th Cir. 2008), the court described Nigeria's Decree 33, which mandates a five-year sentence for "any Nigerian citizen found guilty in any foreign country of an offense involving narcotic drugs or psychotropic substances and who thereby brings the name of Nigeria into disrepute." *Id.* at 949 (quoting National Drug Law Enforcement Agency (Amendment) Decree No. 33 (1990) (Nigeria)). Although Eneh's documentary evidence did not explicitly address Decree 33, we may take judicial notice of its existence. *See Singh v. Ashcroft*, 393 F.3d 903, 905-06 (9th Cir. 2004) (taking judicial notice of the existence of an Indian intelligence agency, based upon articles found through "a simple Lexis search").

**[4]** The BIA's reasoning appears to be at odds with the IJ's decision, Eneh's credible testimony, and judicially-noticeable facts. We therefore vacate the BIA's denial of deferral of removal under CAT and remand for a clearer explanation of its decision.

## IV.

Even if we liberally construe the BIA's decision as adopting the IJ's CAT analysis in its entirety, that analysis also is not supported by substantial evidence. The IJ and BIA fail to acknowledge, let alone analyze, testimony and documentary evidence that Eneh would be individually and intentionally targeted for mistreatment because of his HIV status and associated medical problems.

**[5]** As a preliminary matter, the IJ correctly required Eneh to demonstrate that Nigerian prison officials would intention-

ally torture him because he has AIDS. At the time of briefing, it was somewhat unclear in this circuit whether a petitioner seeking CAT relief must show specific intent to torture or merely "awareness and willful blindness" to torturous conditions by government officials. *See Zheng v. Ashcroft*, 332 F.3d 1186, 1194-97 (9th Cir. 2003). In *Villegas v. Mukasey*, however, we clarified that a petitioner must show for purposes of CAT relief that someone—either a government official or private actor—specifically intended to torture him or her. 523 F.3d 984, 989 (9th Cir. 2008). It is only when the alleged torture would be at the hand of a private entity is mere awareness or wilful blindness by the government sufficient. *Id.*

[6] In *Villegas*, a petitioner with bipolar disorder claimed that if he were removed to Mexico, he would be placed in a mental institution, and he presented evidence that Mexican mental patients are housed in deplorable conditions akin to torture. The panel rejected his CAT claim, because "nothing indicates that Mexican officials (or private actors to whom officials have acquiesced) created these conditions for the specific purpose of inflicting suffering upon the patients." *Id.* Accordingly, the IJ here correctly concluded that Eneh was not entitled to CAT relief solely on the basis that he would have inadequate access to medicine and be subjected to deplorable prison conditions if removed to Nigeria.

[7] Unlike in *Villegas*, however, the thrust of Eneh's argument is not just that the conditions in Nigerian prisons are torturous generally, but that Nigerian prison officials would single him out for mistreatment. Eneh specifically testified that he would be intentionally tortured in Nigerian prisons because he has AIDS, and he provided documentary evidence that prison officials withhold medicine as a form of punishment. The IJ never acknowledged this crucial evidence, despite (1) explicitly finding Eneh to be credible, (2) making detailed findings of fact that otherwise closely tracked Eneh's testimony and (3) expressly acknowledging that "people in Nigeria, with AIDS or HIV are ostracized publicly and social-

ly." The IJ should have at least considered Eneh's testimony and documentary evidence regarding intentional torture, and there is no indication that he did. *See Wakkary v. Holder*, 558 F.3d 1049, 1068 (9th Cir. 2009) ("[T]he CAT regulations cast a wide evidentiary net, providing that 'all evidence relevant to the possibility of future torture *shall be* considered.'" (quoting 8 C.F.R. § 1208.16(c)(3)) (emphasis added)). It appears that the BIA also overlooked this evidence in its own review of the record, given its statement that "[t]here is *no* evidence in the record which demonstrates a likelihood . . . that [Eneh] will otherwise be subject to torture." (emphasis added). On remand, the BIA must give reasoned consideration to Eneh's potentially dispositive testimony and documentary evidence.

**[8]** In a somewhat similar case, the Eleventh Circuit remanded to the BIA to consider whether a petitioner with AIDS would be "individually and intentionally singled out for harsh treatment" in a Haitian prison. *Jean-Pierre v. U.S. Att'y Gen.*, 500 F.3d 1315, 1324-25 (11th Cir. 2007) (emphasis omitted). In *Jean-Pierre*, petitioner sought relief under CAT on the basis that "he will likely be tortured in a Haitian prison when his AIDS infection, unchecked by lifesaving medication, infects his mind and causes him to behave inappropriately or erratically," resulting in abusive treatment from prison guards. *Id.* at 1323. The IJ found petitioner's testimony to be credible, but rejected his claim because "there is no evidence that the government specifically targets [people with HIV/AIDS] for mistreatment or lack of medical treatment." *Id.* at 1319 (alteration in the original). The BIA affirmed in a short opinion. *Id.* at 1320. The Eleventh Circuit granted the petition for review and admonished the BIA for "omitt[ing] from its analysis any review of the most important facts presented in this case." *Id.* at 1325. The BIA had misconstrued Jean Pierre's claim as being "limited to the assertion that placing a man with AIDS in a Haitian prison amounts to a death sentence" and had not considered evidence that placing "*this man*" in a Haitian prison would amount to torture under CAT.

*Id.* (emphasis in original). The Eleventh Circuit held that the BIA had failed to give "reasoned consideration" to Jean-Pierre's claim and remanded to the BIA. *Id.* at 1326. We do the same here.

Although Eneh's testimony and documentary evidence regarding intentional torture is hardly voluminous, the IJ correctly noted that "[t]he testimony of an applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." *See also Kamalthas v. INS*, 251 F.3d 1279, 1282 (9th Cir. 2001). There is nothing in either opinion below, however, to indicate that the IJ or BIA doubted or discounted any aspect of Eneh's testimony in a manner requiring further corroboration.

## V.

For the foregoing reasons, we **GRANT** Eneh's petition for review. We **VACATE** in part the decision of the BIA, and **REMAND** to the BIA to (1) fully consider Eneh's testimony and documentary evidence that he would be intentionally tortured if removed to Nigeria; and (2) provide a reasoned explanation for its decision.